No. 12-20220

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

V.

HOUSTON FUNDING, II LTD. AND HOUSTON FUNDING
CORPORATION,

*Defendants-Appellees,*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Action No. 4:11-cv-02442

APPELLEES' BRIEF

Mark J. Oberti
Texas Bar No. 00789951
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – E-mail

*Attorneys for Appellees*

No. 12-20220

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

V.

HOUSTON FUNDING, II LTD. AND HOUSTON FUNDING
CORPORATION,

*Defendants-Appellees,*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Action No. 4:11-cv-02442

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

A.     **Parties**

Plaintiff-Appellant:     Equal Employment Opportunity Commission

Defendants-Appellees:     Houston Funding II, Ltd. and Houston Funding Corporation

**B.**     **Attorneys**

For Plaintiff-Appellant:        Susan L. Starr
                                Equal Employment Opportunity
                                Commission
                                Office of General Counsel
                                131 M. Street, N.E., 5th Floor
                                Washington, DC 20507
                                (202) 663-4727 – Telephone
                                (202) 663-7090 – Facsimile

For Defendants-Appellees:       Mark J. Oberti
                                Texas Bar No. 00789951
                                723 Main Street, Suite 340
                                Houston, TX 77002
                                (713) 401-3556 – Telephone
                                (713) 401-3547 – Facsimile

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5TH CIR. R. 28.2.4, Appellees Houston Funding II, Ltd. and Houston Funding Corporation submit that the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS.................................................i

STATEMENT REGARDING ORAL ARGUMENT....................................iii

TABLE OF AUTHORITIES..................................................................vi

I.   STATEMENT OF THE ISSUE ........................................................1

II.  STATEMENT OF THE CASE .........................................................2

III. STATEMENT OF THE FACTS.......................................................2

    A.   Venters' Leaves Of Absences In 2008 And Early 2009 ..............2

    B.   Venters' Termination In February 2009.......................................3

    C.   The EEOC's Lawsuit And Contemporaneous Press Release In
        2011..........................................................................................5

    D.   The District Court's Grant Of Summary Judgment In 2012.....5

    E.   The EEOC's Appeal Is Limited To One Issue..........................6

IV.  SUMMARY OF THE ARGUMENT .................................................6

V.   ARGUMENT AND AUTHORITIES...............................................8

    A.   The District Correctly Concluded That Title VII Does Not
        Prohibit "Breast Pump" Discrimination, And Dismissed The
        EEOC's Lawsuit On That Basis....................................................8

        1.   Federal Courts Have Uniformly Held That Title VII Does
            Not Prohibit Breast Pump Discrimination ........................8

        2.   Congress' Actions Further Indicate That Title VII Does
            Not Prohibit Breast Pump Discrimination .....................11

            a.   Lawmakers Have Attempted To Amend Title VII
                For Years To Prohibit Breast Pump Discrimination,
                Thus Indicating That Title VII Does Not Already
                Prohibit Such Discrimination...............................11

b.      After The Events In This Case Occurred, Congress Passed A Law Addressing Breast Pump Discrimination In Employment, Thereby Further Implicitly Confirming That Such Discrimination Was Not Already Covered By Title VII .............................12

3.      Finally, The EEOC's Claim That Title VII Facially Prohibits Lactation Discrimination – Even If True – Does Not Impugn The District Court's Decision To Dismiss This Case Of Alleged Breast Pump Discrimination, Because The EEOC Never Alleged, Much Less Proved, That Venters Was Treated Worse Than Any Similarly-Situated Worker....................................................................14

VI.    CONCLUSION .........................................................................17

CERTIFICATE OF FILING AND SERVICE..............................................18

# TABLE OF AUTHORITIES

## Cases

*Allen v. Totes/Isotoner Corp.*,
   915 N.E.2d 622 (Ohio 2009) ...................................................................17

*Armstrong v. Flowers*,
   33 F.3d 1308 (11th Cir. 1994) ................................................................15

*Coleman v. B-G Maintenance Mgmt.*,
   108 F.3d 1199 (10th Cir. 1997) ..............................................................10

*Derungs v. Wal–Mart Stores, Inc.*,
   374 F.3d 428 (6th Cir. 2004) ..................................................................11

*Hagan v. Echostar Satellite, LLC*,
   529 F.3d 617 (5th Cir. 2008) ..................................................................13

*Harris v. Union Pacific R.R.*,
   141 F.3d 740 (7th Cir. 1998) .............................................................. 9, 15

*Jacobson v. Regent Assisted Living, Inc.*,
   No. CV–98–564–ST, 1999 WL 373790 (D. Or. Apr. 9, 1999)...................10

*LTV Fed. Credit Union v. UMIC Gov't Sec., Inc.*,
   704 F.2d 199 (5th Cir. 1983) ..................................................................12

*Martinez v. N.B.C., Inc.*,
   49 F. Supp. 2d 305 (S.D.N.Y. 1999) .................................................. 9, 10

*Puente v. Ridge*,
   NO. CIV.A. M-04-267, 2005 WL 1653017 (S.D. Tex. Jul. 6, 2005),
   *aff'd on different grounds*, 324 Fed. Appx. 423 (5th Cir. 2009) .........................11

*Serednyj v. Beverly Healthcare, LLC*,
   656 F.3d 540 (7th Cir. 2011) ..................................................................16

*Sikora v. American Can Co.*,
   622 F.2d 1116 (3d Cir. 1980) .................................................................12

*Spivey v. Beverly Enters., Inc.*,
   196 F.3d 1309 (11th Cir. 1999) ..............................................................15

*Urbano v. Continental Airlines, Inc.*,
  138 F.3d 204 (5th Cir. 1998) ................................................................8, 9, 15, 16

*Vachon v. R.M. Davis, Inc.*,
  No. 03-234-P-H, 2004 WL 1146630 (D. Me. Apr. 13, 2004) ......................................10

*Wallace v. Pyro Mining Co.*,
  789 F. Supp. 867 (W.D. Ky. 1990), *aff'd*, 951 F.2d 351 (6th Cir. 1991)......................11

## Statutes

29 U.S.C. § 207 ......................................................................................... 12, 13

29 U.S.C. § 215(a) .........................................................................................14

42 U.S.C. § 2000e *et seq.* .............................................................................. 2, 8, 9

42 U.S.C. § 18001 .........................................................................................12

## Other Authorities

H.R. 2122, 109th Cong. (2005) ............................................................................12

H.R. 2236, 110th Cong. (2007) ............................................................................12

H.R. 2758 & S. 1463, 112th Cong. (2011) ..................................................................12

H.R. 2790, 108th Cong. (2003) ............................................................................11

H.R. 2819, 111th Cong. (2009) ............................................................................12

H.R. 285, 107th Cong. (2001).............................................................................11

*Reasonable Break Time for Nursing Mothers*,
  Fed. Reg. Vol. 75, No. 244 (Dec. 21, 2010)...............................................................13

No. 12-20220

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

*Plaintiff-Appellant,*

**V.**

**HOUSTON FUNDING, II LTD. AND HOUSTON FUNDING
CORPORATION,**

*Defendants-Appellees,*

_____

**On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Action No. 4:11-cv-02442**

_____

TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:

Appellees, Houston Funding II, Ltd. and Houston Funding Corporation (collectively "Houston Funding") file this brief in response to the brief of Appellant, Equal Employment Opportunity Commission ("EEOC").

## I.    STATEMENT OF THE ISSUE

Did the district court correctly conclude that breast pump discrimination is not prohibited by Title VII as amended by the Pregnancy Discrimination Act ("PDA")?

## II.   <u>STATEMENT OF THE CASE</u>

This is a Title VII case.  *See* 42 U.S.C. § 2000e *et seq.*  The EEOC claims that Houston Funding violated Title VII when it terminated Donneeia Venters ("Venters") allegedly because she wanted to use a breast pump when she returned to work more than two months after giving birth.  The district court held that breast pump discrimination is not prohibited by Title VII as amended by the PDA, and entered summary judgment against the EEOC.[1]  The district court's judgment should be affirmed.

## III.   <u>STATEMENT OF THE FACTS</u>

### A.   **Venters' Leaves Of Absences In 2008 And Early 2009**

In 2006, Donneeia Venters ("Venters") went to work as a Collector for Houston Funding.[2]  Between June 28, 2008 and August 4, 2008, Venters took a leave of absence because her doctor ordered her to be on bed rest due to her pregnancy.[3]  When Venters was released to return to work on August 4, 2008, her doctor limited her to working a reduced schedule of 30 hours per week.[4]

---

[1]   (Court's Order Granting Summary Judgment, Docket Entry No. 21 at 2; USCA5 at 206-08;

[2]   (Joint Chronology, Docket Entry No. 5; USCA5 at 23).

[3]   (Venters' Dep., Ex. A at 85-86; USCA5 at 47-48; Joint Chronology, Docket Entry No. 5; USCA5 at 23).

[4]   (Venters' Dep., Ex. A at 91-92; USCA5 at 49-50).

On December 1, 2008, Venters began another leave of absence to have her baby.[5]  Venters delivered her baby on December 11, 2008.[6]  Allegedly, Houston Funding's Limited Partner, Harry Cagle ("Cagle"), had promised to save a spot for Venters until she returned to work.[7]

## B.     Venters' Termination In February 2009

On February 17, 2009, Venters called Cagle on the phone, and told him that she was released to work and was ready to return.[8]  According to Venters, Cagle was initially friendly during the phone call.[9]  But Venters alleges that Cagle's friendly demeanor changed when she told him that she wanted to use a breast pump when she returned to work.[10]  According to Venters, after she told Cagle that she wanted to use a breast pump when she returned to work, he paused several seconds, and then stated, "well, we filled your spot," and told her she had been terminated.[11]  Based on this

---

[5]    (Original Complaint, Docket Entry No. 1 at ¶ 12; USCA5 at 9; Joint Chronology, Docket Entry No. 5; USCA5 at 23).

[6]    (Original Complaint, Docket Entry No. 1 at ¶ 13; USCA5 at 9; Joint Chronology, Docket Entry No. 5; USCA5 at 23).

[7]    (Original Complaint, Docket Entry No. 1 at ¶ 16; USCA5 at 10).

[8]    (Venters' Dep., Ex. A at 181; USCA5 at 52; Original Complaint, Docket Entry No. 1 at ¶ 18; USCA5 at 10; Joint Chronology, Docket Entry No. 5; USCA5 at 24).

[9]    (Venters' Dep., Ex. A at 181-82; USCA5 at 52-53; Original Complaint, Docket Entry No. 1 at ¶18; USCA5 at 10).

[10]    (Venters' Dep., Ex. A at 182-83; USCA5 at 53-54; Original Complaint, Docket Entry No. 1 at ¶18; USCA5 at 10).

[11]    (Venters' Dep., Ex. A at 182; USCA5 at 52; Original Complaint, Docket Entry No. 1 at ¶18; USCA5 at 10).

alleged conversation, Venters contends that Cagle terminated her employment because she informed him that she wanted to use a breast pump when she returned to work. As she testified:

> Q: So now—are you saying now in this lawsuit that you think the reason Harry Cagle didn't want you back at work and fired you instead is because you told him you wanted to use a breast pump when you came back to work?
>
> A: I feel that when I told him about the breast pump, that his attitude changed and he did not want that; and instead of letting me know, he told me I was fired. That's what I feel. That's what happened. In my opinion.
>
> Q: Okay. So it's your testimony that if you had never mentioned the breast pump, you think Harry would have brought you back to work?
>
> A: I believe so.
>
> * * * *
>
> Q: Okay. Right now you're saying that you feel Harry discriminated against you and fired you because you wanted to bring a breast pump back to work. Correct?
>
> A: Yes.[12]

The EEOC agrees with Venters' testimony. It asserts that, based on this alleged conversation, "[t]he fact finder could reasonably conclude that it was only after Venters disclosed to a company Vice President that she wanted to use a back room at the office to express milk that HF decided to fire her."[13]

---

[12] (Venters' Dep., Ex. A at 183-84; USCA5 at 54-55).

[13] (EEOC's Brief at 11).

### C.     The EEOC's Lawsuit And Contemporaneous Press Release In 2011

On June 29, 2011, the EEOC filed suit against Houston Funding under Title VII, claiming that her termination violated the law's proscription against pregnancy discrimination.[14]  That same day, the EEOC issued a press release announcing that Houston Funding "violated federal law by discriminating against an employee because she intended to use a breast pump upon her return from maternity leave. . . ."[15]

### D.     The District Court's Grant Of Summary Judgment In 2012

On November 11, 2011, Houston Funding filed its Motion for Summary Judgment, solely arguing that the EEOC's case failed as a matter of law because breast pump discrimination is not prohibited by Title VII.[16]  On December 12, 2011, the EEOC filed its response.[17]  The EEOC's response addressed issues unrelated to Houston Funding's sole ground for summary judgment, but presented no argument or proof that any similarly-situated employee existed, or was treated better than Venters.[18]  On February 2, 2012, the district court granted Houston Funding's Motion

---

[14]   (Original Complaint, Docket Entry No. 1 at ¶1; USCA5 at 7).

[15]   (http://www.eeoc.gov/eeoc/newsroom/release/6-29-11.cfm).

[16]   (Houston Funding's Motion for Summary Judgment, Docket Entry No. 13; USCA5 at 37-106).

[17]   (Houston Funding's Motion for Summary Judgment, Docket Entry No. 13; USCA5 at 37-106).

[18]   (EEOC's Response to Houston Funding's Motion for Summary Judgment, Docket Entry No. 19; USCA5 at 133-203).

for Summary Judgment, holding that "[f]iring someone because of lactation or breast-pumping is not sex discrimination."[19]  The EEOC then filed this appeal.[20]

## E.    The EEOC's Appeal Is Limited To One Issue

On appeal, the only issue is whether the EEOC asserted a viable claim for relief under Title VII – *i.e.*, whether breast pump discrimination is prohibited by Title VII, as amended by the PDA.   While the EEOC argues in its appellate brief that a reasonable jury could have found that Houston Funding's given reason for terminating Venters' employment was a pretext for breast pump discrimination,[21] Houston Funding did not argue that point as a ground for summary judgment,[22] and the district court explicitly did not base its ruling on any such finding.[23]

## IV.   SUMMARY OF THE ARGUMENT

The EEOC alleges that Houston Funding terminated Venters' employment because she wanted to use a "breast pump" when she returned to work after having a

---

[19]  (Court's Order Granting Summary Judgment, Docket Entry No. 21 at 2; USCA5 at 207).   The same day, the district court entered a final judgment against the EEOC (Final Judgment, Docket Entry No. 22; USCA5 at 209).   On February 9, 2012, the district court entered an amended opinion on summary judgment that made no substantive changes, but made some non-substantive corrections. (Court's Amended Opinion on Summary Judgment, Docket Entry No. 23; USCA5 at 216-18).

[20]  (EEOC's Notice of Appeal, Docket Entry No. 56; USCA5 at 255).

[21]  (EEOC's Brief at 26-32).

[22]  (Houston Funding's Motion for Summary Judgment, Docket Entry No. 13; USCA5 at 37-106).

[23]  (Court's Order Granting Summary Judgment, Docket Entry No. 21 at 2; USCA5 at 206-08; Court's Amended Opinion on Summary Judgment, Docket Entry No. 23; USCA5 at 216-18).

baby.[24]   But, Title VII does not prohibit "breast pump" discrimination.  This is confirmed by the fact that every federal court that has ruled on the issue has concluded that Title VII does not prohibit "breast pump" discrimination.[25]

This conclusion is also confirmed by Congressional action.  First, Congress has repeatedly unsuccessfully tried to amend Title VII to include breast pump discrimination, thereby indicating that the law does not currently prohibit such discrimination.[26]  Second, after the events in this case took place, Congress passed a law addressing breast pump discrimination in employment as an amendment to the Fair Labor Standards Act ("FLSA"), thereby implicitly recognizing that, contrary to the EEOC's claims, Title VII did not already address such discrimination.[27]

Finally, rather than focusing specifically on what this case is about – alleged breast pump discrimination – the EEOC argues more broadly that Title VII facially prohibits lactation discrimination.  But, even assuming for the sake of argument that Title VII facially prohibits lactation discrimination – something no court in America has found – it does not follow that it also facially prohibits employers from terminating employees who want to use breast pumps at work.  In fact, this Court has held that the post-PDA amended Title VII does not require special treatment or

---

[24]   (EEOC's Brief at 11; Venters' Dep., Ex. A at 183-84; USCA5 at 54-55).

[25]   (*See infra* at § V.A.1).

[26]   (*See infra* at § V.A.2).

[27]   (*See infra* at § V.A.2).

accommodation.  *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206-08 (5th Cir. 1998).  Thus, even if the EEOC were correct that lactation discrimination is facially prohibited by Title VII, to prove sex discrimination based on a breast pump discrimination theory in this case under this Court's precedent, the EEOC would have to had presented evidence that Venters was subjected to disparate treatment in comparison to a similarly-situated employee – something the EEOC never even specifically alleged, much less supported with any evidence.  Instead, throughout this case, the EEOC has only asserted a "*per se*" discrimination theory – *i.e.*, that breast pump discrimination is a *per se* violation of Title VII.  That theory fails as a matter of law, and the district court correctly rejected it.

## V.     ARGUMENT AND AUTHORITIES

### A.     The District Correctly Concluded That Title VII Does Not Prohibit "Breast Pump" Discrimination, And Dismissed The EEOC's Lawsuit On That Basis

#### 1.     Federal Courts Have Uniformly Held That Title VII Does Not Prohibit Breast Pump Discrimination

By way of background, Title VII prohibits employers from discriminating against employees "because of sex."   42 U.S.C. § 2000e-2.   In 1978, the PDA amended Title VII, so that the law now further provides that "because of sex" includes "pregnancy, childbirth, or related medical conditions . . . ."   42 U.S.C. § 2000e(k).  The PDA also states that pregnant employees "shall be treated the same for all employment-related purposes . . .  as other persons not so affected but similar in

their ability or inability to work." 42 U.S.C. § 2000e(k). The PDA thus does not require preferential treatment, or accommodations, that are not given to non-covered employees. *See Urbano*, 138 F.3d at 206-08 (PDA does not grant worker right to special treatment); *see also Harris v. Union Pacific R.R.*, 141 F.3d 740, 742 (7th Cir. 1998) ("Under the Pregnancy Discrimination Act a firm need not make accommodations for pregnant workers.").

In this case, as explained above, the EEOC and Venters maintain that Houston Funding terminated Venters' employment because she wanted to use a breast pump when she returned to work after having a baby.[28] But even if that were true, it would not state a viable claim for relief under Title VII. No federal case in the nearly 35 years since the PDA was passed has found that Title VII prohibits "breast pump" discrimination, but several have found that it does not.

In *Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305 (S.D.N.Y. 1999), the plaintiff claimed sex discrimination under Title VII based on her employer's failure to provide a location for her to pump breast milk. *Id.* at 308. The court granted the employer's Motion for Summary Judgment finding that the lack of a similarly-situated class of men was fatal to the plaintiff's claim: "[I]f there is no comparable subclass of

---

[28]  (Venters' Dep., Ex. A at 183-84; USCA5 at 54-55; EEOC's Brief at 11).

members of the opposite gender, the requisite comparison to the opposite gender is impossible." *Id.* at 310-11.[29] The district court further concluded that:

> To allow a claim based on sex-plus discrimination here would elevate breast milk pumping – alone – to a protected status. **But if breast pumping is to be afforded protected status, it is Congress alone that may do so.** Accordingly, Martinez fails to state a *prima facie* claim of gender discrimination.

*Id.* at 311 (bold added).

Likewise, in *Jacobson v. Regent Assisted Living, Inc.*, No. CV–98–564–ST, 1999 WL 373790, at *11 (D. Or. Apr. 9, 1999), the court rejected a claim based on breast pump discrimination, stating that:

> . . . to the extent that Jacobson bases her discrimination claim on her assertion that Gish would not allow her to pump her breast milk, she fails to state a claim. Title VII and the PDA do not cover breast feeding or childrearing concerns because they are not "medical conditions related to pregnancy, childbirth or related medical conditions."

*Id.* (citations omitted).

Other federal courts agree with the holdings in *Martinez* and *Jacobson*. *See Vachon v. R.M. Davis, Inc.*, No. 03-234-P-H, 2004 WL 1146630, at *10 (D. Me. Apr. 13, 2004) (holding that a claim based on breast feeding and breast pumping discrimination was not covered by Title VII); *cf. Wallace v. Pyro Mining Co.*, 789 F. Supp. 867, 869–70 (W.D. Ky. 1990) ("breast-feeding discrimination" does not

---

[29] The Tenth Circuit has made a similar determination: "[G]ender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender. Such plaintiffs cannot make the requisite showing that they were treated differently from similarly situated members of the opposite gender." *Coleman v. B-G Maintenance Mgmt.*, 108 F.3d 1199, 1204 (10th Cir. 1997).

constitute pregnancy discrimination under Title VII), *aff'd*, 951 F.2d 351 (6th Cir. 1991); *cf. Puente v. Ridge,* NO. CIV.A. M-04-267, 2005 WL 1653017, at *4 (S.D. Tex. Jul. 6, 2005) ("Those few courts which have addressed the issue have generally held that breast-feeding is not a condition within the scope of the PDA."), *aff'd on different grounds*, 324 Fed. Appx. 423 (5th Cir. 2009).

In sum, in the nearly three and one-half decades since the PDA's passage, "no judicial body thus far has been willing to take the expansive interpretative leap to include rules concerning breast-feeding within the scope of sex discrimination [under Title VII]." *Derungs v. Wal–Mart Stores, Inc.*, 374 F.3d 428, 439 (6th Cir. 2004). Furthermore, as set out below, Congress' actions indicate that the current, post-PDA version of Title VII does not prohibit breast pump discrimination.

## 2.    Congress' Actions Further Indicate That Title VII Does Not Prohibit Breast Pump Discrimination

### a.    Lawmakers Have Attempted To Amend Title VII For Years To Prohibit Breast Pump Discrimination, Thus Indicating That Title VII Does Not Already Prohibit Such Discrimination

Since 2001, lawmakers have unsuccessfully attempted to amend Title VII to address alleged discrimination based on breast pumping. In 2001, the Breastfeeding Promotion Act ("BPA") was first introduced by Rep. Carolyn Maloney in Congress as an amendment to Title VII under the PDA. *See* BPA of 2001, H.R. 285, 107th Cong. (2001). It failed. The BPA was reurged in 2003, 2005, 2007, and 2009. Each time it failed. *See* BPA of 2003, H.R. 2790, 108th Cong. (2003); BPA of 2005, H.R. 2122,

109th Cong. (2005); BPA of 2007, H.R. 2236, 110th Cong. (2007); BPA of 2009, H.R. 2819, 111th Cong. (2009). Currently pending is proposed legislation, the BPA of 2011, which again seeks to amend Title VII to include breast pumping as protected conduct under the Act. *See* BPA of 2011, H.R. 2758 & S. 1463, 112th Cong. (2011). Congress would not need to amend Title VII to prohibit breast pump discrimination, if the current version of Title VII already covered such discrimination. Therefore, the lengthy and unsuccessful history of the BPA indicates that Title VII does not prohibit breast pump discrimination.[30]

      b.    <u>After The Events In This Case Occurred, Congress Passed A Law Addressing Breast Pump Discrimination In Employment, Thereby Further Implicitly Confirming That Such Discrimination Was Not Already Covered By Title VII</u>

The conclusion that Title VII does not prohibit breast pump discrimination is further confirmed by the fact that, after the events giving rise to this case occurred, Congress passed a law addressing breast pump discrimination. Specifically, President Obama signed the Patient Protection and Affordable Care Act, H.R. 3590, on March 23, 2010, and the Reconciliation Act of 2010, H.R. 4872, on March 30, 2010. *See* P.L. 111-148 & 111-152, 124 Stat. 119, 42 U.S.C. § 18001. Section 4207 of the law amends the FLSA, 29 U.S.C. § 207, to require an employer to provide reasonable break time

---

[30] While the proposed BPA states it is merely clarifying that the PDA was intended from the start to cover breast pump discrimination, that statement does not control, because even "repeated references to and legislative history concerning Congress's intent to clarify [the] meaning of [a] statute do not justify [an] inference that amendment was to be retroactive." *LTV Fed. Credit Union v. UMIC Gov't Sec., Inc.*, 704 F.2d 199, 202 (5th Cir. 1983) (citing *Sikora v. American Can Co.*, 622 F.2d 1116, 1121 (3d Cir. 1980)).

for a non-exempt employee to express breast milk for her nursing child for one year after the child's birth each time such employee has need to express milk. *See* 29 U.S.C. § 207(r). Thus, as of March 2010, the FLSA provides a remedy to non-exempt employees who are discriminated against for requesting to breast-pump at work, like Venters allegedly was.

Specifically, Section 215(a)(2) of the FLSA makes it unlawful for employers to violate any provision of section 207, including Section 207(r). FLSA Section 215(a)(3) makes it unlawful for an employer to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA. This provision has been interpreted by the majority of courts, including this Court, to include oral intra-company complaints about perceived FLSA violations. *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 626 (5th Cir. 2008) ("We adopt the majority rule, which allows an informal, internal complaint to constitute protected activity under Section 215(a)(3), because it better captures the anti-retaliation goals of that section").

Therefore, as the Department of Labor has correctly observed, a non-exempt employee who is terminated for seeking to breast pump at work now has a cause of action for retaliation under FLSA Section 215(a)(3). *See Reasonable Break Time for Nursing Mothers*, Fed. Reg. Vol. 75, No. 244, at p. 80078 (Dec. 21, 2010) ("if an employee is "discharged or in any other manner discriminated against" because she has filed a complaint or caused to be instituted any proceeding regarding break time

for expressing breast milk, the employee may file a retaliation complaint with the Department or she may file a private cause of action seeking reinstatement, lost wages, and other appropriate remedies.") (citing 29 U.S.C. § 215(a)(3)).

The fact that Congress felt the need to pass a new law in 2010 amending the FLSA to address breast pump discrimination implicitly further confirms that – as the district court held – breast pump discrimination was not already covered by Title VII at the time Venters was terminated.

3.   **Finally, The EEOC's Claim That Title VII Facially Prohibits Lactation Discrimination – Even If True – Does Not Impugn The District Court's Decision To Dismiss This Case Of Alleged Breast Pump Discrimination, Because The EEOC Never Alleged, Much Less Proved, That Venters Was Treated Worse Than Any Similarly-Situated Worker**

The EEOC and the *amici* argue that lactation discrimination is prohibited by Title VII and the PDA.   They reason that lactation is a "medical condition" related to "pregnancy" or childbirth, and is thus covered by the plain language of the PDA.[31] No federal court has agreed with the EEOC's and the *amici's* expansive reasoning.[32] But, even if the EEOC and the *amici* were correct, that would not impugn the district court's decision to dismiss this case because the EEOC's claim here admittedly hinges specifically on whether Title VII prohibits breast pump discrimination, not merely

---

[31]   (EEOC's Brief at 22, 25; Brief of Amici Curiae Texas Medical Association, and the Texas Pediatric Society at 7-9, 15).

[32]   (*See cases cited at* § V.A.1, *supra*).

lactation discrimination.[33]  Terminating a lactating worker because she wants to bring a breast pump to work is the denial of a request for special treatment or accommodation.    But, the PDA does not mandate special treatment or accommodation.  *See Urbano*, 138 F.3d at 206-08 (PDA does not grant worker right to special treatment); *see also Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999) ("The PDA does not require that employers give preferential treatment to pregnant employees."); *Armstrong v. Flowers*, 33 F.3d 1308, 1313–1317 (11th Cir. 1994) (same); *Harris*, 141 F.3d at 742 ("Under the Pregnancy Discrimination Act a firm need not make accommodations for pregnant workers.").

For example, suppose an employee wants to breastfeed her newborn baby at work, but the employer refuses, and instead terminates the employee.  Under the analysis the EEOC and the *amici* urge the Court to follow in this case, the employer would be guilty of lactation discrimination, and liable for intentional discrimination under Title VII.[34]  But that is contrary to the law in this Circuit.  Rather, under this Circuit's law, even assuming, solely for the sake of argument, that lactation discrimination is facially prohibited by Title VII, to prevail in such a case under an intentional discrimination theory, the affected employee would have to plead and

---

[33]  (Venters' Dep., Ex. A at 183-84; USCA5 at 54-55).

[34]  The *amici* offer another a good example of the slippery slope this reasoning creates.  They point out that "even postpartum depression" would be covered by Title VII under the reasoning that they, and the EEOC, urge this Court to adopt (Brief of Amici Curiae Texas Medical Association, and the Texas Pediatric Society at 9).

present proof that the employer treated her worse than similarly-situated non-PDA covered workers *i.e.*, that similarly-situated workers were permitted to bring their children to work for other reasons. *See Urbano*, 138 F.3d at 206-08 (airline's policy of granting light-duty assignments only to workers who suffered occupational injuries did not violate PDA, so long as pregnant women were not treated any differently from any other worker who was injured off duty); *see also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 549-52 (7th Cir. 2011) (same).

Similarly, here, even if, as the EEOC contends, lactation discrimination is facially covered by Title VII, it does not follow that terminating an employee because she wants to use a breast pump at work necessarily violates the PDA. Rather, even if lactation discrimination is facially covered by Title VII, to prevail on its claim that terminating Venters allegedly because she wanted to use a breast pump at work violated the PDA under this Circuit's precedent, the EEOC had to plead and present evidence that Venters was treated worse than some similarly-situated comparator employee – something the EEOC never even specifically alleged, much less presented proof of, in its summary judgment response[35] or appellate brief.[36] *See Urbano*, 138 F.3d at 206-08. Indeed, even the lone Ohio state court judge who believed lactation discrimination is facially prohibited by the PDA agrees with this analysis. *See, e.g.,*

---

[35] (EEOC's Response to Houston Funding's Motion for Summary Judgment, Docket Entry No. 19; USCA5 at 133-203).

[36] (EEOC's Brief at 26-32).

*Allen v. Totes/Isotoner Corp.*, 915 N.E.2d 622, 631 (Ohio 2009) (O'Connor, J.,[37] concurring in judgment only) (expressing her view that lactation discrimination is facially prohibited by the PDA, but still agreeing that the plaintiff's breast pump discrimination case was properly dismissed because she failed to present evidence of disparate treatment).     This Circuit-mandated analysis is fatal to the EEOC's case because, throughout this lawsuit, the EEOC only asserted a "*per se*" discrimination theory – *i.e.*, that breast pump discrimination is a *per se* violation of Title VII.     As explained herein, that theory fails as a matter of law, and that the district court correctly rejected it.

## VI.     CONCLUSION

For the reasons set forth above, Appellees Houston Funding II, Ltd. and Houston Funding Corporation pray that this Court affirm the district court's grant of summary judgment in their favor, and for all other relief to which they are justly entitled.

---

[37] The EEOC seems to believe that the Justice O'Connor who concurred in the *Allen v. Totes/Isotoner Corp.* case was former U.S. Supreme Court Justice Sandra Day O'Connor, "sitting by designation before the Ohio Supreme Court . . . ." (EEOC's Brief at 22).  It was not.  Rather, it was Justice Maureen O'Connor, a sitting Justice of the Ohio Supreme Court. www.supremecourt.ohio.gov/SCO/justices/oconnor/default.aspx.

Respectfully submitted,

By:  s/ Mark J. Oberti
Mark J. Oberti
Texas Bar No. 00789951
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com - Email

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 30, 2012, I electronically filed the foregoing document with the Clerk of the Court by using the appellate CM/ECF system, and participants who are registered for electronic filing in this case will be served by the Court's CM/ECF system.

I further certify that a copy of the foregoing document was served via first-class mail and placed into an official depository of the United States Postal Service and/or have dispatched it to a third-party commercial carrier for delivery within three (3) calendar days to the following counsel of record:

Susan L. Starr
Equal Employment Opportunity Commission
Office of General Counsel
131 M. Street, N.E., 5th Floor
Washington, DC 20507

Donald P. Wilcox
Texas Medical Association
401 W. 15th Street
Austin, TX 78701-1680

I further certify:  (1) that any privacy redactions have been made as required by 5th Cir. R. 25.2.13, or no such redactions were required; (2) this electronic submission of Appellee's Brief is an exact copy of the paper document filed with the Court; and (3) this document has been scanned and is free of any viruses.

s/ Mark J. Oberti
Mark J. Oberti
Attorney of Record for Appellees