No. 12-20220
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
    Plaintiff-Appellant,

v.

HOUSTON FUNDING LTD. II, et al.,
    Defendants-Appellees.
_____

On Appeal from the United States District Court
for the Southern District of Texas
_____

REPLY BRIEF OF THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION AS APPELLANT
_____

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

DANIEL T. VAIL
Acting Assistant General Counsel

SUSAN L. STARR
Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C. 20507-0001
(202) 663-4727
susan.starr@eeoc.gov

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ........................................................................................ 1

CONCLUSION .....................................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Black v. Pan American Labs., LLC, 646 F.3d 254 (5th Cir. 2011)...........................12

Burlington Northern v. Santa Fe Ry. Co., 548 US. 53 (2006) .................................10

Chapter 7 Trustee v. Gate Gourmet, Inc., ___ F.3d ___ , 2012 WL 2072671
    (11th Cir. June 11, 2012) ....................................................................................12

County of Washington v. Gunther, 452 U.S. 161 (1981) ........................................10

Derungs v. Wal-Mart, 374 F.3d 428 (6th Cir. 2004) ...............................................4

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)....................................8

Garcia v. Gloor, 618 F.2d 264 (5th Cir. 1980) .........................................................6

General Electric Co. v. Gilbert, 429 U.S. 125 (1976) ...............................................1

Jacobson v. Regent Assisted Living, Inc., No. CIV-98-564, 1999 ...........................3

Martinez v. N.B.C., Inc., 49 F. Supp. 2d 305 (S.D.N.Y. 1999) ................................3

McDonnell Douglas v. Green, 411 U.S.792 (1973) .................................................12

Nev. Dep't of Human Res. v. Hibbs, 538, U.S. 721 (2003) ......................................5

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998).............................9

Pension Ben. Guar. Corp. v. LTV Corp., 496 U.S. 633 (1990) ................................8

Puente v. Ridge, 2009 WL 1311504 (5th Cir. May 12, 2009) ..................................3

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).......................... 11-12

Urbano v. Continental Airlines, Inc., 138 F.3d 204 (5th Cir. 1998) .......................12

Vachon v. R.M. Davis, Inc., No. 03-234, 2004 WL 1146630 (D. Me. 2004)...........4

<u>Wallace v. Pyro Min. Co.</u>, 789 F. Supp. 867 (W.D. Ky. 1990), <u>aff'd on other grounds</u>, 951 F.2d 351 (1991)..............................................................................4

<u>Willingham v. Macon Tel. Publ'g Co.</u>, 507 F.2d 1084 (5th Cir. 1975)  (en banc)...........................................................................................................6, 7

## STATUTES

29 U.S.C. §§ 207(r) ............................................................................... 9-10

29 US.C. §215(a)(3)..................................................................................10

42 U.S.C. § 2000e-2(a) (1)..................................................................passim

Pregnancy Discrimination Act ("PDA"), 42 U.S.C. §2000e-(k) ....................passim

Public Law 111-148 (2010) ................................................................ 9-10

## OTHER AUTHORITIES

http://medicaldictionary.thefreedictionary.com/prolactin .........................................7

www.ehow.com/about_6465302_history-breast-pump.html ....................................3

ARGUMENT

Title VII makes it unlawful for an employer "to discharge any individual . . .

because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The

Commission alleges that Houston Funding ("HF") violated this prohibition when

Vice-President Harry Cagle fired Donnicia Venters because she wanted to return to

work while she still was lactating (i.e., producing and expressing breast milk).  The

district court granted the defendant's motion for summary judgment, holding that

"firing someone because of lactation or breast-pumping is not sex discrimination."

ROA 207, RE Tab 3.1.[1]

In our opening brief, the EEOC pointed out that Title VII's express terms, its

legislative history, and case law all support the conclusion that discrimination on

the basis of a female-specific trait, such as producing or expressing milk, is

discrimination because of sex.  EEOC br. at 14-16.  We argued that when Congress

passed the Pregnancy Discrimination Act ("PDA"), it clarified that Title VII's

protections "extend to the whole range" of related "physiological occurrences

peculiar to women."  Id. at 23.  We also contended that the decisions cited by the

district court, mostly unpublished, were distinguishable or unhelpful because they

(1) contained no analysis or support; (2) rested on discredited reasoning (i.e., the

majority opinion in General Electric Co. v. Gilbert, 429 U.S. 125 (1976)), which

---

[1] "ROA" refers to the record on appeal.  "RE" refers to EEOC's record excerpts.

had already been repudiated by Congress; and/or (3) relied on an inapplicable "sex-plus" analysis. EEOC br. at 18-24. Finally, we argued that under the correct legal analysis, the record evidence is sufficient to create a genuine dispute about whether HF terminated Venters because Cagle was opposed to Venters returning to work while she was still producing and expressing milk.

In its brief as appellee, HF does not directly respond to the Commission's argument that firing a woman because of the sex-specific trait of lactation is firing her on the basis of her sex. HF does not disagree that both Supreme Court precedent and the law of this Circuit make clear that Title VII's broad statutory prohibition on sex discrimination applies whenever (some or all) employees of one sex are subjected to disadvantageous terms of employment to which employees of the opposite sex are not. EEOC br. at 17-18. HF similarly does not challenge the Commission's assertion that when an employer discriminates based on a sex-specific trait or function, the employer violates Title VII. And HF does not dispute that lactation is such a female sex-specific trait. EEOC br. at 14-16. Moreover, although HF relies on many of the same cases cited by the district court, it simply ignores the arguments the EEOC made in its opening brief as to why those cases are unpersuasive and/or inapposite.

Instead, shoehorning the facts of this case into inapposite case law, HF tries to reframe and transform the EEOC's theory of the case into what HF somewhat

dismissively (and repeatedly) calls "breast-pump discrimination." HF br. at 1-2, 5-8, 11-17. HF contends that "[n]o federal case in the nearly 35 years since the PDA was passed has found that Title VII prohibits 'breast pump' discrimination, but several have found that it does not." HF br. at 9.[2] According to HF, neither Title VII nor the PDA protects against this type of discrimination because Title VII does not require employers to provide special accommodations for pregnant (or recently pregnant) employees. HF cites for support the handful of cases in which lactating employees were denied requests for benefits in excess of that offered other employees. See HF br. at 9-11(citing Puente v. Ridge, 2009 WL 1311504 at *4 (5th Cir. May 12, 2009) (employer rejected request for extra break); Vachon v. R.M. Davis, Inc., No. 03-234, 2004 WL 1146630 at *10-11 (D. Me. 2004) (employer rejected employee's request for "extra paid or unpaid leave on a daily basis" to return home to breast feed her child); Martinez v. N.B.C., Inc., 49 F. Supp. 2d 305, 309-10 (S.D.N.Y. 1999) (employer rejected request for extra break time to express milk); Jacobson v. Regent Assisted Living, Inc., No. CIV-98-564,

---

[2] It is true that only a few federal courts have addressed whether Title VII prohibits discrimination based on the act of producing and/or expressing milk. But contrary to HF's suggestion, that is not necessarily because courts are skeptical that Title VII covers cases like this one. Rather, scenarios precisely like this simply would not have arisen before technological advances in the 1990s made breast-pumping possible. See www.ehow.com/about_6465302_history-breast-pump.html (explaining that the first-vacuum powered electric breast pump for non-hospital use was manufactured in 1991 and "allowed women to return to work and still provide human milk").

1999 Lexis 7680 at *29-30 (same); <u>Wallace v. Pyro Min. Co.</u>, 789 F. Supp. 867,

869 (W.D. Ky. 1990) (employer denied employee extra personal leave to breast-

feed her infant at home), <u>aff'd on other grounds</u>, 951 F.2d 351 (1991)).[3]

But that is not the EEOC's theory of this case.  This is not a "special

accommodation" case, as HF would like to characterize it.  Rather, this is a

straightforward case of sex-based conduct.  It is uncontested that the first time

Cagle learned that Venters was interested in expressing milk at the workplace,

Cagle responded negatively, with a sharp, "No.  Maybe she needs to stay home

longer."  EEOC br. at 4.  And when Venters called Cagle and told him she wanted

to express milk in the workplace, Cagle took a noticeably lengthy pause before

telling her that her position was filled.  <u>Id.</u>  On this record, a reasonable jury could

conclude that Cagle fired Venters because he thought she should not come back to

work while she still was lactating – e.g., because he believed that new mothers

should stay at home until they no longer are actively nursing or simply should not

be expressing milk while at work.  Thus, far from being novel or unprecedented (as

HF would have the Court believe, HF br. at 7, 8, 9, 11), the EEOC's case, at its

---

[3] <u>Derungs v. Wal-Mart</u>, also cited by HF (HF br. at 11), is a public
accommodations case addressing whether, under Ohio law, a business can ban
customers from breast-feeding in public areas.  <u>See</u> 374 F.3d 428 (6th Cir. 2004).
There, in dicta, the Sixth Circuit noted some of the same Title VII cases HF cites
here.  <u>See id.</u> at 437, 439.  However, the Court in <u>Derungs</u> did not endorse or adopt
the rationales or holdings in any of these decisions.

4

core, is about discrimination grounded in common sex-based stereotypes. Cf. Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 736-737 (2003) (explaining that sex discrimination "is rooted, primarily, in stereotypes about women when they are mothers or mothers-to-be") (internal quotation marks omitted).

Nothing in the record suggests that Cagle terminated Venters to comply with a company practice of refusing to give extra breaks or private space for any employee to perform personal physiological functions.  There is nothing to indicate that Cagle was simply standing on principle, refusing to treat Venters more favorably than other employees or to give her a benefit that other employees would not get.  Cagle did not say that his decision to fire her had anything to do with her request to use a back office occasionally to express milk.  He did not state he could not provide her such space.  He did not state he could not provide her adequate break time.  He did not question her ability to perform her job while lactating.  Cagle did not ask Venters a single question or voice a single concern about whether it would be feasible or desirable to "accommodate" her.   And HF has never contended in this litigation (or during the administrative processing of Venters's charge or in its representations to the Texas Workforce Commission), that Cagle fired Venters because she wanted something in addition to what was offered to other employees.  Rather, HF has argued exclusively and consistently that Cagle fired Venters for "job abandonment."  The authorities HF cites in

support of affirmance – all cases in which the employee was denied a benefit in excess of that offered other employees – thus are inapposite.

Further, none of these cases grapples with the Commission's fundamental argument:  Title VII's general prohibition on sex-based discrimination prohibits employers from terminating women because they are lactating.  Rather, the decisions analyzed the language of the PDA.  As we noted in our opening brief, EEOC br. at 13-14, those rulings focused myopically on the three-term phrase "pregnancy, childbirth or related medical conditions," completely ignoring the terms preceding that phrase that clarify that Title VII's general sex-based prohibition is to be viewed expansively.  42 U.S.C. §2000e-(k) (discrimination based on sex "<u>includes, but [is] not limited to</u> . . . pregnancy, childbirth or related medical conditions") (emphasis added).  EEOC br. at 23-25.

This Court has made clear that Title VII "should reach any device or policy of an employer which serves to deny acquisition or retention of a job or promotion in a job to an individual because the individual is either male or female." <u>Willingham v. Macon Tel. Publ'g Co.</u>, 507 F.2d 1084, 1091 (5th Cir. 1975) (en banc).  The statute "focuses its laser of prohibition" on discrimination based on characteristics "either beyond the victim's power to alter . . . or that impose a burden on an employee on one of the prohibited bases . . . [such as] fundamental sex characteristics." <u>Garcia v. Gloor</u>, 618 F.2d 264, 269 (5th Cir. 1980).  Lactation

is a fundamental sex characteristic of the female sex.  <u>See</u> <u>generally</u>

<u>http://medicaldictionary.thefreedictionary.com/prolactin</u> (prolactin – which,

together with other hormones released during pregnancy and childbirth, initiate and

maintain milk production, or lactation – "has no known function in human males").

Firing a female worker because she is lactating punishes her because of a normal

biological and physiological function unique to women.  Thus, refusing to let an

employee return to work because she still is lactating contravenes Title VII's

express language, as well as the intent of Congress to guarantee equal job

opportunities for men and women.  <u>Cf.</u> <u>Willingham</u>, 507 F.2d at 1091 (recognizing

that "an employer cannot have one hiring policy for men and another for women").

In addition to failing to challenge the EEOC's argument that Title VII's

general ban on sex discrimination prohibits employers from terminating employees

because they are lactating, HF interprets the PDA itself erroneously.  HF

summarily asserts, without analysis, that lactation is not a "medical condition"

related to pregnancy or childbirth.  HF br. at 14.  HF offers no explanation for this

conclusion.  It does not state what qualifies as a "related medical condition" or why

lactation does not.

Moreover, HF simply ignores the Supreme Court precedent and legislative

history supporting an inclusive reading of the PDA's terms.  EEOC br. at 22-23.

HF fails to explain how its position can be reconciled with specific passages of the

provision's legislative history explaining that Congress intended the protections of the PDA to include "physiological conditions" which are "peculiar to women." Id. Similarly, HF does not contest the biological fact that lactation is the natural hormonal outgrowth of pregnancy and childbirth. (Nor, factually, could it have.) Indeed, given the link between pregnancy, childbirth, and lactation – and using common sense to interpret what "related medical conditions" means – the conclusion that lactation properly fits within the PDA's protections actually is rather unremarkable. See EEOC br. at 20-26.

Perhaps recognizing the weakness in its other arguments, on appeal HF resorts to claiming that Title VII and the PDA could not possibly cover discrimination based on lactation because subsequent Congresses have sought to amend Title VII to include it explicitly. See HF br. at 11-12. However, HF's argument – that legislative initiatives proposed more than 30 years after the PDA's enactment restrict the meaning and scope of that provision as passed in 1978, HF br. at 11-12 – is without merit. Mere (unsuccessful) attempts to amend legislation cannot be relevant to, much less dispositive of, the proper meaning and scope of an existing statute. See generally Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114 (1989) (recognizing that "[t]he views of a subsequent Congress form a hazardous basis for inferring intent of an earlier one") (internal citations omitted); Pension Ben. Guar. Corp. v. LTV Corp., 496 U.S. 633, 650 (1990) (noting that

"subsequent legislative history" is "a particularly dangerous ground on which to rest an interpretation of a prior statute when it concerns . . . a proposal that does not become law"). Indeed, Congressional inaction "lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." Id.

Moreover, what matters most in interpreting the statute is not whether the original Congress consciously contemplated covering lactation discrimination. Rather, the critical inquiry is whether lactation falls naturally within the meaning of the text, which, as we explained in our opening brief, it does. See EEOC br. at 20-26. As the Supreme Court has noted:

> [S]tatutory prohibitions often go beyond the principal evil [they were passed to combat] to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits "discriminat[ion] . . . because of . . . sex" in . . . employment. [This] . . . must extend to [sex-based discrimination] of any kind that meets the statutory requirements.

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79-80 (1998).

Equally without merit is HF's suggestion that inclusion of benefits for lactating employees in the Affordable Health Care Act ("AHCA") somehow circumscribes Title VII's protections. HR br. at 13-14; see also Pub, L. No. 111-148 (2010) (codified as amended at 29 U.S.C. § 207(r) (mandating certain

employers to provide accommodations such as lactation facilities and unpaid break time for certain employees, with limited remedies).  There is nothing unusual about federal statutes, such as Title VII and the AHCA, coextensively prohibiting the same or similar acts and providing overlapping protections – particularly where the two statutes cover different types of employers or employees, or offer different remedies.[4]  Cf. County of Washington v. Gunther, 452 U.S. 161, 178-80 (1981) (remedies are available for equal pay claims under both Title VII and the Equal Pay Act (EPA), a provision of the Fair Labor Standards Act (FLSA), because although they are coextensive in part, Title VII prohibits a broader range of practices than the EPA does).[5]

---

[4] As noted above, although courts have held that Title VII does not require employers to grant break requests from lactating employees if the breaks requested exceed the break time given non-lactating employees, the AHCA may require otherwise.  But again, this case is not about whether Title VII requires employers to provide special treatment to lactating employees.

[5] Similarly, HF's reference to a possible cause of action for retaliation under the AHCA/FLSA is inapt.  See HF br. at 13-14, (citing 29 US.C. §215(a)(3), noting that under the FLSA an employer may not retaliate against an employee who complains about the employer's failure to provide the accommodations guaranteed by the AHCA).   This case involves discrimination based on animus against (or stereotypes related to the proper role of) lactating female employees – not retaliation for engaging in protected activity.  Cf. Burlington N. & Santa Fe Ry. Co. v. White, 548 US. 53, 63 (2006) ("The substantive provision [of Title VII] seeks to prevent injury to individuals based on who they are, i.e., their status [as members of a protected class].  The anti-retaliation provision seeks to prevent harm based on what they do, i.e., their conduct [e.g., opposing discrimination at work or filing an EEOC charge].").

Finally, HF contends that "the only issue" on appeal is whether the EEOC "asserted a viable claim for relief under Title VII" – not whether "a reasonable jury could have found that [HF's] given reason for terminating Venters' employment was a pretext for breast pump discrimination . . . ." HF Br. at 6. While HF did not argue below that summary judgment should be granted because there is no genuine dispute as to whether Cagle fired Venters for "job abandonment," this Court nevertheless is free to recognize that a genuine dispute on this issue <u>does</u> exist, necessitating a trial.

HF fails to counter the Commission's argument that drawing all reasonable inferences in favor of the EEOC, the record evidence is sufficient for a reasonable jury to find that Cagle really fired Venters because of a sex-specific trait. Rather, HF argues that to prevail on a Title VII claim of intentional sex discrimination (like this one), this Circuit requires a plaintiff to show that the victim "was treated worse than some similarly-situated comparator employee." HF br. at 16. In the absence of evidence that the employer treated the lactating worker "worse than similarly-situated non-PDA covered workers," HF contends, an employee can never demonstrate an inference of discrimination. <u>Id.</u>

HF is mistaken. All that is required to make out a prima facie case is to adduce evidence that the victim suffered an adverse action "under circumstances which give rise to an inference of discrimination." <u>Tex. Dep't of Cmty. Affairs v.</u>

11

Burdine, 450 U.S. 248, 253 (1981).  Comparator evidence is often relevant to

claims of intentional discrimination, including claims under the PDA involving

equal treatment under workplace rules.  See Urbano v. Continental Airlines, Inc.,

138 F.3d 204, 206 (5th Cir. 1998).  But the Supreme Court, this Court, and other

Courts have long recognized that Title VII does not require such evidence.  See

McDonnell Douglas Corp. v. Green, 411 U.S. 7792, 802 n.13 (1973) (explaining

that the circumstantial evidence framework is intended to be flexible and "is not

necessarily applicable in every respect to differing factual situations"); Black v.

Pan Am., LLC, 646 F.3d 254, 278 (5th Cir. 2011)  (emphasizing that the statute

"does not require evidence of a comparable employee whom the employer treated

differently than the Title VII plaintiff"); see also Chapter 7 Trustee v. Gate

Gourmet, Inc., ___ F.3d ___ , 2012 WL 2072671 at *6 (11th Cir. June 11, 2012)

(holding that non-pregnant comparator evidence is not required where plaintiff

demonstrates pregnancy discrimination through other evidence sufficient to raise a

reasonable inference of discrimination).  In a case like this one involving an

adverse employment action allegedly taken because of a sex-linked trait, a plaintiff

could use comparator evidence, but does not need to.

        Here, as we explained in our opening brief, there is ample affirmative

evidence that HF fired Venters because she wanted to return to her job while she

still was lactating (e.g., Cagle's statement that Venters should "stay home longer").

There also was abundant proof demonstrating that HF's proffered reason was not worthy of belief.  EEOC br. at 28-32.  This was sufficient evidence to allow the Commission to present its case to a jury.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and the case should be remanded for trial.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

DANIEL T. VAIL
Acting Assistant General Counsel


/s/ Susan L.P. Starr_____
SUSAN L.P. STARR
Attorney
EQUAL EMPLOYMENT OPPORTUNITY
   COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507
(202) 663-4727
susan.starr@eeoc.gov

<u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation set forth in the Federal

Rules of Appellate Procedure 29(d) and 32(a)(7)(B) and Fifth Circuit Rule 32.

This brief contains 2,761 words, from the Argument through the Conclusion, as

determined by the Microsoft Word 2007 word processing program, with 14-point

proportionally spaced type for text and 14-point proportionally spaced type for

footnotes.

    <u>/s/ Susan L.P. Starr          </u>
    Attorney for Equal Employment
     Opportunity Commission


    Dated:  <u>June 25, 2012</u>

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on June 25, 2012, the foregoing reply brief of the EEOC

as appellant was electronically served on the counsel listed below via the Court's

CM/ECF Notice of Activity system at their electronic addresses of record:

 Attorney for Defendant-Appellee:

Mark Joseph Oberti
OBERTI SULLIVAN, LLP
Suite 340
734 Main Street
Houston, TX  77002

Attorney for Amicus Curiae Texas Medical Ass'n  and Texas Pediatric Society:

Donald P. Wilcox, Esq.
General Counsel
Texas Medical Association
401 West 15th Street
Austin, TX  78701


                /s/ Susan L.P. Starr_____



                Susan L.P. Starr, Esq.